**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
WARREN JOSEPH,                      :
                                    :  Civil Action No. 05-5233 (JLL)
         Petitioner,                :
                                    :
         v.                         :        **O P I N I O N**
                                    :
DEPARTMENT OF HOMELAND SECURITY     :
                                    :
         et al.,                    :
                                    :
         Respondents.               :
_____ :

**APPEARANCES:**

    WARREN JOSEPH, Petitioner Pro Se
    #153104 A5W
    Hudson County Correctional Center
    Kearny, New Jersey 07032

    CHRISTOPHER J. CHRISTIE, United States Attorney
    PETER G. O'MALLEY, Assistant U.S. Attorney
    970 Broad Street, Suite 700
    Newark, New Jersey  07102
    Attorneys for Respondents

**JOSE L. LINARES, District Judge**

    Petitioner WARREN JOSEPH (hereinafter "Petitioner"), is currently being detained by the Department of Homeland Security ("DHS"), Bureau of Immigration and Customs Enforcement ("BICE"), at the Hudson County Correctional Center, Kearny, New Jersey, pending his removal from the United States.

    On January 28, 2005, Petitioner, a native of Trinidad and Tobago, filed a petition (hereinafter "Underlying Petition") with

this Court challenging his order of removal.[1]  See Pet., Joseph v. Ashcroft, 05-0622 (DMC), Docket No. 1 (Jan. 18, 2005).  On June 6, 2005, the case was transferred to the Court of Appeals for the Third Circuit pursuant to the REAL ID Act, Pub. L. No. 109-13.  See Joseph v. Ashcroft, 05-0622 (DMC), Docket No. 19 (June 6, 2005).  The Court of Appeals for the Third Circuit granted Petitioner a stay of removal pending the Appellate Court's review on Petitioner's Underlying Petition.  See Answer, Ex. at 8-9 ("Deciding Official's Custody Determination," "Decision to Continue Detention").  The DHS did not release Petitioner and he remained in custody, being precluded from removal to Trinidad due to the stay.  See id.

Petitioner filed his current Petition[2] asserting that: (1) he should be released from custody during the stay period (Petitioner claims that his continuing detention is unlawful because he does

---

[1] Petitioner's removal ensued from his May 3, 2000 arrest for interstate transport of firearms, and two following arrests executed on April 21, 2003 and February 5, 2005, both for violations of Petitioner's probation.

[2] The Petition mainly consists of long accounts of Petitioner's military achievements.  See Pet. at 5-6.  Petitioner also seems to suggest that his equal protection rights are being violated.  While prisoners possess the constitutional right to equal protection, a prisoner's claims raising an equal protection challenge should be brought as a civil rights action under 42 U.S.C. § 1983 or Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), rather than a petition for a writ of habeas corpus.

not pose a flight risk or danger to public safety);[3] and (2) his confinement is indefinite.[4]  See Pet. §§ 10, 15.  The Government filed an Answer to the Petition, accompanied by a certified copy of the relevant administrative record, asserting that Petitioner's continued detention during the period of stay is lawful.  See Answer at 2-4. While Respondents admit that Petitioner is detained pursuant to 8 U.S.C. § 1231(a), Respondents stress that the circumstances of Petitioner's continued detention are not similar to the circumstances under which a detention could be ruled unconstitutional.  See id. at 3-4 (comparing Petitioner's circumstances with those in Zadvydas v. Davis, 533 U.S. 678 (2001)).  Moreover, Respondents point out that "there are no obstacles to [Petitioner's] prompt removal to Trinidad and Tobago

---

[3] Petitioner asserts that it is a violation of the separation of powers for the administrative brunch to keep Petitioner detained while the judiciary issued a stay of removal pending judicial review.  See Pet. at 4-5.

[4] Since Petitioner does not specify why Petitioner believes his detention is indefinite, it is unclear to this Court whether Petitioner implies that the United States Court of Appeals for the Third Circuit would never render a decision, hence making Petitioner's detention indefinite, or whether the DHS would not succeed in removing Petitioner to Trinidad.  However, since this Court surmises that Petitioner, same as this Court, believes that a decision by the United States Court of Appeals for the Third Circuit is forthcoming in the near future, the Court reads Petitioner's statement that his detention is indefinite as one suggesting that the DHS is unlikely to succeed in removing Petitioner to Trinidad.

should the Court of Appeals rule against [Petitioner]," hence allowing removal. Id. at 4.

## DISCUSSION

**A.    Standard of Review**

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**B.    Analysis**

Post-removal-order detention is governed by 8 U.S.C. § 1231(a).  Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a 90-day "removal period."

The removal period begins on the latest of the following:

4

>  (i) The date the order of removal becomes administratively final.
>  (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>  (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days. However, the Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard. Specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a resident alien must be released if he can establish that his removal is not reasonably foreseeable. See Zadvydas v. Davis, 533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005).

In addition § 1231(a)(1)(C) provides that the removal period shall be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal."

Here, it appears that Petitioner is arguing that he should not be subject to incarceration simply because he secured a stay of removal. However, it has been held that the six-month presumptively reasonable post-order-removal period of Zadvydas is *tolled* when an alien requests judicial review of a removal order. See Soberanes v. Comfort, 388 F.3d 1305, 1311 (10th Cir. 2004)(detention "directly associated with a judicial review process

5

that has a definite and evidently impending termination point" is "more akin to detention during the administrative review process, which was upheld [by the Supreme Court]")(citing Demore v. Kim, 538 U.S. 510, 527-29 (2003)); Wang v. Ashcroft, 320 F.3d 130, 145-47 (2d Cir. 2003)("where a court issues a stay pending its review of an administrative removal order," the post-order detention provisions of § 1231 do not apply because "the removal period commences on 'the date of the court's final order'"); Akinwale v. Ashcroft, 287 F.3d 1050, 1052 n.4 (11th Cir. 2002)(by applying for stay, petitioner interrupted the running of the time under Zadvydas); Evangelista v. Ashcroft, 204 F. Supp. 2d 405, 409 (E.D.N.Y. 2002)(petitioner's reliance on Zadvydas to be released from detention is "disingenuous" when sole reason being held is his requested stay of deportation); Hines-Roberts v. Ashcroft, 2003 WL 21305471 at *3 (D. Conn. Jun. 5, 2003) (as a result of stay of deportation, Attorney General could not seek to bring about petitioner's deportation, and therefore, period of detention does not raise due process issue presented in Zadvydas); Archibald v. INS, 2002 WL 1434391 at *8 (E.D. Pa. July 1, 2002) (because petitioner asked for and was granted stay of deportation, he is not being held in violation of Zadvydas, but rather held pursuant to stay he requested).

Here, Petitioner sought, and was granted a stay of the removal order by the United States Court of Appeals for the Third Circuit.

This stay of removal remains in effect while Petitioner's Underlying Petition for review is pending in the Court of Appeals. Thus, this Court finds that, as the stay is still in effect, the presumptively-reasonable six-month period has not yet begun to run pursuant to 8 U.S.C. § 1231(a)(1)(B)(ii).  See  Singh v. Gonzalez, 2006 U.S. Dist. LEXIS 9695 (D.N.J. Feb. 21, 2006) (making the same finding);  Washington v. Ashcroft, 2006 U.S. Dist. LEXIS 5448 (D.N.J. Feb. 8, 2006) (same); Harvey v. Homeland Sec. (BICE), 2006 U.S. Dist. LEXIS 5439 (D.N.J. Feb. 8, 2006).

Moreover, there is no indication in the record that Petitioner's removal to Trinidad is not reasonably foreseeable or that travel documents will not be issued once, and if, the stay of removal is lifted.  Accordingly, it appears that Petitioner's continuing detention complies with the express provision of 8 U.S.C. § 1231(a)(1)(B)(ii).

Nevertheless, Petitioner appears to contend that the sheer length of his prolonged detention violates his right to due process under the Fifth Amendment.  In Oyedeji v. Ashcroft, 332 F. Supp. 2d 747 (M.D. Pa. 2004), the district court noted that the "price for securing a stay of removal should not be continuing incarceration," and concluded that the due process clause of the Fifth Amendment requires that a criminal alien should be afforded an opportunity to be heard on the question of conditional release pending judicial review of a final administrative order of removal, the execution of

7

which has been stayed by judicial order.  See Oyedeji, 332 F. Supp. 2d at 753-754; Harrison v. Hogan, 2005 WL 2020711 (M.D. Pa. July 18, 2005); Haynes v. Department of Homeland Security, 2005 WL 1606321 (M.D. Pa. July 8, 2005).  The court's opinion in Oyedeji is the minority view given the overwhelming majority of courts determining to the contrary.[5]  See infra at 6-7.

However, as a lawful permanent resident of the United States, Petitioner is entitled to the protections of the Due Process Clause under the Fifth Amendment.  Tineo v. Ashcroft, 350 F.3d 382, 398 (3d Cir. 2003).  The Supreme Court so stated in Zadvydas, recognizing that "[f]reedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that Clause protects."  533 U.S. at 690.  Moreover, analogous to this case despite the fact that it involved an excludable alien, the Third Circuit has held that

> [w]hen detention [of an alien] is prolonged, special care must be exercised so that the confinement does not continue beyond the time when the original justifications for custody are no longer tenable.  The fact that some aliens posed a risk of flight in the past does not mean they will forever fall into

---

[5] Moreover, the facts in Oyedeji were very different from this case. Here, Petitioner's custody of sixteen months is a period of relatively short duration in comparison to that in Oyedeji, where the petitioner was placed in custody in 1999 and was still confined in 2004 pending the Second Circuit's review of his removal order. There is no indication that the Underlying Petition for review in this case is lagging in the courts.  Moreover, unlike in Oyedeji, Petitioner has received an individualized and meaningful custody review, consistent with the Third Circuit's ruling in Ngo v. INS, 192 F.3d 390 n.6 (3d Cir. 1994).

>that category.  Similarly, presenting danger to the community at one point by committing crime does not place them forever beyond redemption.

Ngo v. INS, 192 F.3d 390, 398 (3d Cir. 1994).  The fact that a stay of removal has been issued in this case should not change this result.  See Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003)(an alien not normally subject to indefinite detention as in Zadvydas should not be detained simply because he seeks avenues of relief legally available to him; while the alien may be responsible for seeking a stay of removal, he is not responsible for the length of time such determinations may take); Oyedeji, 332 F. Supp. 2d at 753 (the price for securing a stay of removal should not be indefinite detention).

Thus, having concluded that Petitioner is protected by the Fifth Amendment's Due Process Clause, this Court must next determine the review to which Petitioner is entitled with respect to conditional release.  The Third Circuit's decision in Ngo provides relevant instruction in this regard as to the rules governing post-order custody reviews, now set forth in 8 C.F.R. § 241.4(i).[6]  The rules specify the following: (1) advance written

---

[6] The rules evaluated by the Third Circuit in Ngo are no longer in force, but seven elements listed by the court offer guiding principles by which to measure the current review procedures now in effect at 8 C.F.R. § 241.4.  For instance, under 8 C.F.R. § 241.4(i), the Director of the Headquarters Post-Order Detention Unit ("HQPDU") is required to designate a two-person panel to make recommendations on whether an alien should be released or detained.  This recommendation must be unanimous.  The initial review, and at the beginning of subsequent reviews, the review panel examines the

notice to alien of an opportunity to present information supporting release; (2) right to representation at the review; (3) right to an annual personal interview; (4) written explanations for a custody decision must be provided; (5) an opportunity for administrative review must be given; (6) custody reviews should occur every six months; and (7) a refusal to presume continued detention based on criminal history. Ngo, 192 F.3d at 399. The Third Circuit held that these provisions, if conscientiously applied, gave reasonable assurance of fair consideration of a petitioner's application for conditional release pending removal. Id.

Here, the administrative record shows that Petitioner did receive a custody review in August 2005, consisting of an examination of petitioner's file and information that petitioner submitted to the BICE reviewing officials. See Answer, Ex. at 8-9

---

alien's records. If the panel does not recommend release, or if the HQPDU Director rejects a recommendation for release, the alien shall be personally interviewed by the review panel. The alien may have a representative at this interview, subject to reasonable security concerns, and he may submit any information he believes may be pertinent in securing his release.
    Under 8 C.F.R. § 241.4(d), an alien may obtain a conditional release from detention by showing that his release will not pose a significant risk of flight and danger to the community, to the safety of others or to property pending removal. Under 8 C.F.R. § 241.4(e), an alien is eligible for release if the review panel or the HQPDU Director find that the following criteria are met: (1) travel documents are not available or immediate removal is otherwise not practicable or not in the public interest; (2) the alien is presently a non-violent person; (3) the alien is likely to remain non-violent if released; (4) the alien is not likely to pose a threat to the community if released; (5) the alien is not likely to violate the conditions of release; and (6) the alien does not pose a significant flight risk if released.

("Deciding Official's Custody Determination," "Decision to Continue Detention"). A written Decision to Continue Detention was dated August 15, 2005, and sent to Petitioner. Another custody review is imminent. See Decision to Continue Detention (Aug. 15, 2005) ("This Office will once again review your custody status [either] 90 days after the stay of removal has been lifted or one year from the date of this decision").

Thus, having carefully reviewed the record, the Court finds that Petitioner is not entitled to any greater custody reviews than that which the BICE has already provided him. Petitioner received a custody review in which the review panel considered Petitioner's file and submissions for conditional release. There is no indication that Petitioner's removal to Trinidad will not be expeditiously accomplished once, and if, the judicial stay of removal is lifted. Petitioner is also guaranteed another custody review which apparently has not yet occurred at the time of this decision being rendered.

Accordingly, the Court concludes that Petitioner's continued detention is statutorily permissible under 8 U.S.C. § 1231(a)(1)(B)(ii), because his removal period has not yet commenced. Moreover, Petitioner's continued detention does not violate due process and is not constitutionally impermissible at this juncture because he has been afforded an individualized custody review. Therefore, the Petition will be denied without

prejudice to allow Petitioner the opportunity to reassert his claims regarding continued detention if the BICE does not provide adequate due process in the future.

## CONCLUSION

For the reasons set forth above, this petition will be denied, without prejudice to Petitioner bringing a new petition if the Government fails to provide him an adequate custody review in the future that comports with the due process principles set forth in this Opinion.

An appropriate order follows.

/s/ Jose L. Linares
**JOSE L. LINARES**
**United States District Judge**

Dated:    June 9, 2006